[No. 3836.   Decided July 23, 1901.]

D. A. MURPHY, *Respondent,* v. J. D. CLARKSON *et ux.,*
*Appellants.*

ACTION AGAINST UNDISCLOSED PRINCIPAL—NON-SUIT.

In an action against an undisclosed principal upon a contract
for the sale of land, plaintiff should be non-suited, where the
evidence shows the contract was executed in the name of an al-
leged agent, as if the latter were the owner; that the contract
in nowise disclosed the relation of principal and agent; that
nothing was shown indicating that plaintiff believed he was deal-
ing with an agent, nor tending to show a mutual mistake in
so drawing the contract, nor a ratification by the principals,
with full knowledge of the material facts respecting the unau-
thorized acts of the alleged agent.

Appeal from Superior Court, King County.—Hon.
GEORGE E. MORRIS, Judge *pro tem.*   Reversed.

*Wilmon Tucker* and *Ivan L. Hyland,* for appellants.

*Fred H. Peterson* and *Goodwin Speed,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by respondent,
Murphy, against the appellants, Clarksons, who are hus-
band and wife.   On May 15, 1897, appellants resided in
the state of Missouri, and were the owners of certain real
estate situated in Walla Walla Addition to the city of
Seattle.   On said date they executed a power of attorney,
wherein they appointed one F. L. Fehren, of Seattle, as
their attorney in fact, and authorized him "to contract for
the sale of, or grant, bargain, sell, convey, and confirm,
all those certain lots, pieces, or parcels of land situated,
lying, and being in King county, state of Washington,
bounded and described as follows: 'lots  .  .  .  11 and
12, block 13  .  .  .  all in Walla Walla Addition to the

city of Seattle,' and for us and in our names and as our
act and deed to sign, sell, execute, acknowledge and deliver
contracts for a deed or deeds to the above lots or parts of
lots." The power of attorney describes many lots, but
those named above are all that need be mentioned here.
On or about the 4th day of April, 1899, a written agree-
ment was entered into, signed by respondent, Murphy, and
by Fehren-Marvin Company, by Charles E. Marvin. The
terms of said agreement were to the effect that Murphy
agreed to purchase the lots above described at the price of
$525. Fifty dollars in cash was paid by Murphy at the
time the agreement was executed, and it was agreed that
$50 more should be paid on or before thirty days from
that date, and thereafter payments were to be made in in-
stallments of $50 or more at a time, and the whole of the
purchase price was to be paid within one year from date.
It was further agreed that, if Murphy should require an
extension of time, the time should be extended to a limit
of one-half to be paid within the first year, and one-half
on or before two years. The complaint alleges that
through inadvertence and mistake the said contract was
executed on behalf of appellants, Clarkson and wife, in the
name of Fehren-Marvin Company, whereof the said
Fehren was then an officer, but that Murphy paid $50, and
that the contract so executed and the money so paid were
immediately sent to the Clarksons in Missouri, who re-
tained both the money and the contract, and ratified the
contract. It is also alleged that Fehren, as agent for the
Clarksons, extended the time of payment of $50 for a
period of sixty days after May 4, 1899, of which the
Clarksons had actual notice, and that on June 6, 1899,
Murphy tendered the Clarksons the sum of $50, which was
refused. It is further alleged that appellants refused to
recognize said contract, or to abide thereby, and that they

notified respondent that they would not carry out its terms; that thereupon respondent demanded of them the return of the said $50, which was refused; that respondent has in every particular carried out the said contract, and is ready and willing to carry out his part thereof, but that appellants still refuse to do so; that said lots are of the value of $750, and respondent, by reason of appellants' refusal to carry out the terms of said contract, has been damaged in the sum of $225, as a loss arising out of his bargain to purchase said lots, and in the further sum of $50 wrongfully detained by appellants. He prays for judgment in the sum of $275. The answer denies the material allegations of the complaint, and alleges affirmatively that appellants executed the power of attorney heretofore mentioned constituting F. L. Fehren their attorney in fact, which continued in force until May 24, 1899, when it was revoked; that said Fehren-Marvin Company were never the agents of appellants, and never had any right or authority of any kind whereby they might or could execute or deliver any paper writing, or in any manner whatsoever bind or represent appellants with relation to any property belonging to appellants; that, notwithstanding these facts, said Fehren-Marvin Company, through Charles Marvin, one of its officers and agents, entered into the agreement heretofore described; that the appellants have at all times mentioned been, and now are, the owners of the property described in said contract, and they have never at any time ratified, approved, confirmed, or consented to the execution of said agreement; that they never at any time received any money consideration or other thing of value on account of said agreement; that said agreement was executed and delivered by and through the said Fehren-Marvin Company, with the intention of cheating appellants, and of incumbering the legal title to the property

therein described, and at that time standing in the name
of appellants. A trial was had before a jury, and a verdict
was returned in favor of respondent for the sum of $75.
Appellants moved for a new trial, which was, by the court,
denied, and thereupon judgment was entered in favor of
respondent for the sum of $75 and costs against J. D.
Clarkson and against the marital community consisting of
J. D. Clarkson and his wife, Ida Clarkson. From said
judgment the Clarksons have appealed.

There are many assignments of error, but we do not
think it will serve any good purpose to discuss them all.
The verdict returned in this case being for such a small
amount, we should hesitate to interfere with it were it not
that an important principle seems to be involved. The
complaint and proof show that the lots belonged to Clark-
son and wife. They had made Fehren their agent by power
of attorney. The contract for sale was not made by Fehren,
but by Fehren-Marvin Company. The latter were never
authorized by the Clarksons to contract for the sale of the
lands. The contract itself was not even drawn or signed
by Fehren, but by Marvin, another member of Fehren-
Marvin Company. The Clarksons are nowhere mentioned
in the contract. It is drawn as though Fehren-Marvin
Company were the owners of the land. The relation of
principal and agent is nowhere disclosed in the instrument.
It is alleged that through mistake it was so drawn. It is
not alleged that the mistake was mutual, nor does the evi-
dence show such to have been the fact. We are unable
to find from the evidence that Murphy knew or believed
that he was dealing with an agent. It does not satisfac-
torily appear that he knew at that time that the Clarksons
were the owners of the land. Fehren testified that he au-
thorized the substance of the contract as it was drawn, but
that it was drawn as the contract of Fehren-Marvin Com-

pany through mistake. Murphy, however, does not appear to have been in possession of the facts which constituted the alleged mistake. He must have dealt with Fehren-Marvin Company believing them to be the owners of the land and able to give the title which they guarantied in the contract. It is not shown that he was fraudulently misled, or that he could not, by the exercise of reasonable diligence, have discovered the facts. He now attempts to show by parol proof that he was in fact dealing with the Clarksons through Fehren-Marvin Company as sub-agents of Fehren. All this is foreign to anything appearing upon the face of the written contract. Clearly, we think, his remedy is against the party with whom he contracted as shown by the face of the writing. Their liability arises under the rule announced in *Shuey v. Adair,* 18 Wash. 188 (51 Pac. 388, 39 L. R. A. 473, 63 Am. St. Rep. 879), where it is held that an agent who executes a promissory note in his own name, with nothing on the face of the instrument disclosing his agency, cannot introduce parol evidence to exonerate himself from liability on the ground that the note was executed in behalf of his principal, and that the payee was aware of the relation of the parties, and of the intent with which the instrument was executed; that, in an action by the holder against the maker of a promissory note, the latter cannot, on the ground that he executed the note as an agent, require the principals to be made party defendants, since the holder cannot be forced to sue any other parties than those disclosed by the instrument itself. Fehren-Marvin Company were in no sense the agents of the Clarksons. Their act was, therefore, without authority from them. If it be conceded that the contract made by one not an agent for any purpose was one the Clarksons could have ratified, the respondent introduced no evidence whatever to show that Mrs. Clark-

son, one of the owners of the land, even had any knowledge of its existence, or by any act whatever assented to it. There is conflict in the evidence as to what became of the $50 paid by Murphy to the Fehren-Marvin Company, but there is no evidence whatever to show that Mrs. Clarkson ever received any portion of the money, or that she knew that it was ever paid by any one or to any one. In *O'Shea v. Rice,* 49 Neb. 893 (69 N. W. 308, 310), the court says:

"It is elementary law that knowledge by the principal of the material facts is an essential element of an effective ratification of the unauthorized acts of his agent."

For these reasons we think the court erred in not granting appellants' motion for a non-suit. The judgment is therefore reversed and remanded, with instructions to the lower court to enter judgment of non-suit.

ANDERS, FULLERTON and MOUNT, JJ., concur.