**SEUFERT BROS. CO. v. LUCAS, Internal Revenue Com'r.**

**No. 5862.**

Circuit Court of Appeals, Ninth Circuit.

Oct. 13, 1930.

Robt. T. Jacob and Alfred P. Dobson, both of Portland, Or., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Randolph C. Shaw, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before DIETRICH and WILBUR, Circuit Judges, and WEBSTER, District Judge.

WEBSTER, District Judge.

This proceeding involves income and profit taxes for the year 1920 and comes here on petition to review an order of the Board of Tax Appeals. The opinion of the board will be found in 14 B. T. A. 1023. The pertinent facts as found by the board are these: The petitioner, an Oregon corporation, is engaged in the fruit and fish canning and packing business in Seufert, Or., and in connection with its plant owns and operates extensive fruit orchards, for the irrigation of which ditches, canals, and pipe lines had been constructed and installed. · Extensive buildings, including offices, barns, garages, etc., had been erected on the property for use in connection with petitioner's business operations. During the year 1919, or prior thereto, the Highway Commission of the State of Oregon made a survey for the purpose of relocating the Dalles-Pendleton highway and determined to run the road through the properties of the petitioner in such way and place that great damage would have been occasioned the petitioner by reason of the necessary removal of fruit trees, the abandonment of a portion of the orchard, the destruction of irrigation ditches and the digging of cuts and the making of fills through the property. The orchard and cannery grounds were already divided by a double track railroad, and the proposed highway would divide them again and would parallel the railroad for a considerable distance, causing additional inconvenience to the petitioner. ·On learning of the proposed location of the highway, the president of the petitioner corporation endeavored to have the route of the road changed so that it would run around the orchard and cannery grounds, thereby obviating damage to the orchard and irrigation system and avoiding the abandonment of a part of the orchard. Either route of the proposed road required a bridge to cross a creek which ran through the petitioner's property, but the location proposed by the petitioner required a higher bridge, which would cost $5,000 more than the one contemplated by the highway commission. Negotiations between the parties resulted in changing the location of the road, as desired by the petitioner, upon its payment of the sum of $5,000 to cover the additional cost of the bridge. The money was

paid and the road and bridge were so constructed, resulting in no damage to petitioner's property. The petitioner had its own roads on its property, sufficient to answer its purposes and requirements, and shipped its products in carload lots by means of a railroad switch at its plant and did not use the new highway for market or business purposes. The construction of the highway, as finally located, added no value to petitioner's property, but the change in the route saved a part of the orchard, prevented damage to the irrigation system, and obviated other inconvenience, and "the property was made more valuable by the construction of the road as desired by taxpayer than it would have been had the road been constructed as originally located." The change in location saved the petitioner more than $5,000, which it would have cost to reconstruct the irrigation ditches, and the same amount in the value of the orchard saved from destruction and abandonment. The road was built from a special fund and not by local assessments against the property.

The question presented for decision is: May the amount paid by petitioner to the highway commission in the circumstances stated be deducted from petitioner's income for the year in which it was made? The solution of this problem calls for a determination of whether the amount paid was a capital expenditure, or a deductible business expense, or a loss, under the Revenue Act of 1918. It is frequently extremely difficult to draw a line of demarcation between deductible business expenses and capital expenditures. No hard and fast rule can be laid down. Each case must be considered in the light of its own peculiar facts, having due regard to the language of the applicable statute. Section 215 of the Revenue Act of 1918 (40 Stat. 1069) reads:

"That in computing net income no deduction shall in any case be allowed in respect of * * * (b) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

In the present case, however, the amount paid by the petitioner to the highway commission was not paid out for the purpose of increasing the value of its property or estate, and the board expressly found that the construction of the highway as finally located added no value to the taxpayer's property. The petitioner was confronted with a situation threatening serious and permanent damage to its property. If the road had been constructed as originally proposed by the highway commission, the petitioner's injury would have been vastly more than the amount paid to cover the additional cost of the higher bridge. Without such payment the location of the road would not have been changed in the manner desired by the petitioner. So in order to minimize its injury it preferred to pay the amount necessary to cover the additional cost involved. The outlay was not made for an improvement or betterment intended to increase the value of the taxpayer's property. It was an expense incurred to prevent or at least to lessen a threatened injury to its property. The petitioner had no need for the road and does not use it in carrying on its business activities. It had everything to lose and nothing to gain by the construction of the highway through its property. If the road had been constructed as originally intended, petitioner's property would have been seriously and permanently damaged, and yet the road added no value to the taxpayer's property; neither did it afford the petitioner any needful or useful convenience. It would seem from the findings of the board that the road as finally constructed might very easily be said to be a positive disadvantage to the taxpayer. It is true the board found that the change in location of the road saved a part of the taxpayer's orchard and prevented damage to its irrigation system, but this is no more than to say that the payment made resulted in averting at least in part an impending damage to its property. The finding that petitioner's property was made more valuable by the construction of the highway as desired by the petitioner than it would have been had the road been constructed as originally proposed is merely to say in effect that the payment made by the taxpayer resulted in reducing or minimizing the loss or injury it otherwise would have sustained. It is far from equivalent to saying that the expenditure was for improvements or betterments made to increase the value of the taxpayer's property or estate. It seems too plain for argument that the outlay was not made with any such thought in mind. The board in deciding the case held that the payment involved did not constitute an ordinary or necessary expense paid or incurred in carrying on a trade or business. In this conclusion we are inclined to concur.

"The Treasury Department early took and has consistently adhered to the stand that if an expense is to constitute an allowable deduction, it must meet three tests, namely, (1) the expenditure must be for an expense in

connection with the maintenance and operation of the taxpayer's business or business properties, (2) it must be an ordinary expense, and (3) it must be a necessary expense. It has been properly held that not one or two of these qualifications will entitle the taxpayer to deduct the expenditure; all three must be present." Klein on Federal Income Taxation, p. 394.

The statute by its terms seems to cover usual or common expenses having relation to the taxpayer's income, as distinguished from exceptional and extraordinary outlays. It does not follow, however, that merely because a particular expenditure does not amount to a business expense it thereby becomes a capital expenditure and in consequence not deductible. Subdivision (4) of section 234(a) of the Revenue Act (40 Stat. 1078) provides, in the enumeration of allowable corporation deductions: "(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise." A careful perusal of all available cases and texts fails to discover any authority lending support to the proposition that money prudently and necessarily expended to prevent an impending injury to property amounts to an outlay for improvements or betterments made to increase the value of a taxpayer's property or estate, especially when it appears that the structure or thing paid for to avoid the threatened damage in fact adds no value to the property, and was not expected to do so at the time the expenditure was incurred. It seems difficult to distinguish in principle between such an expenditure as is involved in the case in hand and one incurred in erecting a barrier to prevent the spread of fire to one's premises. Surely the barrier, no matter how permanent in character, would not be an improvement or betterment made to increase the value of the estate, even though its erection prevented the complete destruction of the property. Palpably the cost of the barrier would be a loss incurred in an effort to save property from destruction and would be deductible under the subdivision of the section making provision for losses sustained during the taxable year.

In the dissenting opinion of Judge Phillips, a member of the board in this case, this language is found:

"Accepting as correct the findings of fact made by the Division of the Board which heard this proceeding that 'the construction of the highway as finally located added no value to taxpayer's property,' it is my opinion that the deduction claimed must be allowed, not as an expense of the business but as a loss.

"The payment in question was not made to acquire additional property or for an improvement to the property. It was made to protect the property interest which petitioner already possessed. In this respect it differs from all of the cases cited. It is my opinion that where expenditures are made to prevent damage to property used in a business, which expenditure merely preserves the present status of such property, adding nothing of capital value, a loss has been sustained which is deductible. For that reason, I can not agree that the decision reached is proper and must dissent."

We are impressed that these observations present the sound view of the question under review. Counsel for respondent insist that inasmuch as the petitioner in asserting its claim before the Board of Tax Appeals sought relief only on the ground that the payment in question was covered by subdivision (1) of section 234(a) of the Revenue Act as for an ordinary business expense, it cannot now be heard to contend that the outlay was deductible under subdivision (4) of that section as for a loss. To this contention we cannot subscribe. It is not consonant with modern ideals of judicial administration. It would make important rights hang by too slender a thread. Even in a criminal case an indictment which properly charges the essentials of a crime is not bad merely because an inapplicable statute is pleaded. If an offense is charged under any existing law defining a crime, the indictment is good. In the instant case the facts upon which the petitioner sought relief were fully set forth in its claim, and the evidence adduced disclosed the entire transaction in sufficient detail and completeness to enable the board to make all pertinent and essential findings under either subdivision of the statute. The mere fact that one subdivision of the section was relied on instead of another was not sufficient to warrant the board in denying appropriate relief under the facts disclosed under the applicable subdivision of the section. The case of Gatliff Coal Co. v. Lucas, Commissioner (App. D. C.) 36 F.(2d) 545, cited and relied upon by counsel for respondent in this connection, does not militate against this view, for the reason that in that case the record before the Board of Tax Appeals did not contain any evidence relating to the subdivision of the statute upon which the taxpayer sought to rely in the appellate court. Furthermore, the dissenting opinion in the case by one of the

members of the board shows conclusively that the theory of granting relief as for a loss, instead of a deductible expense, was called to the attention of the board at the time it had the matter under consideration.

The action of the board in disallowing the deduction sought is reversed.

WILBUR, Circuit Judge, concurs.