### WHITE v. COMMISSIONER OF INTERNAL REVENUE.

### POLLARD v. SAME.

Nos. 6672, 6673.

Circuit Court of Appeals, Ninth Circuit.

Nov. 14, 1932.

J. S. Y. Ivins, of Washington, D. C. (Brewster, Ivins & Phillips, of Washington, D. C., of counsel), for petitioners.

G. A. Youngquist, Asst. U. S. Atty. Gen., and Sewall Key and S. Dee Hanson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and C. E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

These two cases were consolidated for hearing and decision before the Board of Tax Appeals (21 B. T. A. 1087) and likewise have been consolidated before this court on petitions to review the orders of the Board of Tax Appeals sustaining the determination by the Commissioner of Internal Revenue of deficiencies in the income taxes of petitioners for the year 1923.

The facts as found by the Board are substantially as follows: In 1919 the petitioner Willard W. White and his then partner, one A. F. Page, arranged with the Bank of Willows, Cal., to advance them, as the partnership of Page & White, such amounts of money as they might need for the operation of a ranch that they then owned. To secure the payments of the promissory notes then given, or to be given, for such loans, they executed a chattel mortgage to the bank covering personal property on the ranch. On the security of said chattel mortgage, Page & White borrowed from the Bank of Willows a total of $83,334 between November 29, 1919, and May 19, 1921, no part of which had been repaid on the latter date. On May 19, 1921, the Bank of Willows assigned to the F. D. Cornell Company, for a recited consideration of $25,000, the said chattel mortgage and chattel mortgage notes in the amount of $22,800 secured thereby. The balance of the notes secured by said mortgage, amounting to $60,534, were retained by the bank.

F. D. Cornell & Co., as the assignee of said chattel mortgage and of certain of the promissory notes secured by said mortgage, took possession of and removed from the ranch owned by Page & White the property covered by the mortgage, without any foreclosure proceedings. This loss of their property, which included equipment used on the ranch, made it impossible for Page & White further to operate the ranch. Page & White dissolved partnership in 1921, and by the agreement of dissolution White assumed and agreed to pay certain specified indebtedness, not including the notes of Page & White still held by the Bank of Willows. The agreement of dissolution also contained the following provision: "It is agreed that in respect to firm indebtedness or joint indebtedness of Page & White not specifically assumed and agreed to be paid by Willard W. White under the foregoing, that each of the parties hereto shall continue as heretofore jointly liable as individuals but not as copartners and that this agreement constitutes a full satisfaction and adjustment of all existing claims and liabilities of the parties hereto, both as copartners and individuals, one to the other."

In February, 1922, the petitioners, Willard W. White and Arthur P. Pollard, formed a partnership under the firm name and style of White & Pollard, for the purpose of engaging in and carrying on the business of real estate, insurance, and general brokerage business at Oakland, Cal. Pollard knew at the time he entered into the partnership with White about the notes of Page & White held by the Bank of Willows. The articles of partnership, executed by the petitioners White and Pollard contained, among other things, the following provision: "It is further understood that the partnership does not assume any of the obligations of Willard W. White or the former obligations of Page & White, except the obligations specifically assumed by Willard W. White upon the dissolution of his partnership with Alva F. Page, and does not assume any of the indebtedness to the Bank of Willows, save and except in the event that a satisfaction of all obligations of Willard W. White to the Bank of Willows can be obtained so as to cost the partnership not to exceed Ten Thousand ($10,000) Dollars, in which event the partnership shall be beholden therefor."

Throughout the year 1922 the Bank of Willows continually demanded that the petitioner White pay the remainder of the Page & White notes, aggregating $60,534, and threatened to sue White on said notes. No suit was begun, however, and White's attorneys advised him that he had a complete defense against any suit that might be brought against him by the bank on said notes. However, the demands and threats of the bank so harassed and worried White that he was unable properly to attend to and assist in carrying on the partnership business. In order to obviate the possibility of litigation with respect to said notes, and to avoid further worry and annoyance to White, the

partnership of White & Pollard effected a settlement with the Bank of Willows in February, 1923. Under the terms of this settlement, Willard W. White was released from any liability to the bank on these notes "in consideration of the sum of Ten Thousand ($10,000) Dollars in hand paid by Carlos G. White and in consideration of the execution and delivery to said bank by W. W. White and A. P. Pollard of a promissory note in the sum of Ten Thousand ($10,000) Dollars and other valuable consideration, the receipt whereof is hereby acknowledged."

During the year 1923 the partnership of White & Pollard paid $1,000 upon the principal of said joint note executed by the petitioners and mentioned in said settlement agreement. The remainder of said note was paid during the years 1924 to 1927, inclusive.

In the year 1922 the partnership of White & Pollard paid bills amounting to $1,475.73 for ranch supplies purchased by the partnership of Page & White.

The petitioners and the partnership of White & Pollard kept their books of account and made their returns of income upon the basis of cash receipts and disbursements.

The partnership of White & Pollard filed a return of income for the year 1923. From the gross income shown on said return there was deducted the amount of $21,475.73, the amount of said settlement by the partnership with the Bank of Willows, together with said bills for ranch supplies paid by the partnership of White & Pollard in 1922 for the former partnership of Page & White. Each of the petitioners included in his individual income tax return for 1923 one-half of the income of the partnership of White & Pollard so computed. The respondent disallowed said deduction of $21,475.73, and added to the reported income of each of the petitioners for 1923 one-half of the amount of such deduction, to wit, $10,737.86, and determined deficiencies in tax against White in the sum of $1,745.72 and against Pollard in the sum of $1,761.67. From the orders sustaining these deficiencies entered by the Board of Tax Appeals, the petitioners have appealed.

At the outset it should be stated that the issue before this court has been limited to the deduction of $11,000, which sum was paid in 1923. As to the other $10,475.73 ($1,-475.73 paid in 1922 for ranch supplies purchased by Page & White and $9,000 paid between 1924 and 1927 on the $10,000 note executed by White & Pollard), petitioners

now concede that, under the authorities, this was not a proper deduction, since they reported their income on a cash receipts and disbursements basis and this amount was not paid during the taxable year 1923.

Petitioners contend that the $11,000 was a deductible item, either as a business expense paid by the partnership or as a loss sustained by the partnership. Of the $11,000, only $1,000 was indisputably paid by the partnership, it appearing in the settlement agreement that the $10,000 cash was paid by Carlos G. White, whose connection with the partnership, if any, does not appear in the record. In view of our conclusion as to the whole sum, it is unnecessary to consider this feature of the case.

In so far as material to a consideration of these questions, the Revenue Act of 1921, § 214(a), 42 Stat. 239, provides:

"Sec. 214. (a) That in computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business."

It is conceded by appellants, as it must be under the authorities, that no deduction from income can be claimed as a matter of right and whatever deduction may be taken is solely a matter of statutory grant. Lloyd v. Commissioner (C. C. A.) 55 F.(2d) 842. The burden is upon the taxpayer to prove that the facts bring the case squarely within the deduction provisions of the statute. Burnet v. Houston, 283 U. S. 223, 51 S. Ct. 413, 75 L. Ed. 991; Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385.

The evidence shows that the payments in question were made in settlement of a separate individual debt of petitioner Willard W. White, a debt not created by the firm of White & Pollard and in no way connected with or growing out of the business of that firm. Indeed, the obligation thus adjusted was incurred some two years before the partnership of White & Pollard was organized and while White was a member of the partnership of Page & White, which

incurred the indebtedness. It is claimed by petitioners that the amount paid was deductible as an ordinary and necessary expense on the ground that it was necessary to avoid a lawsuit, thus protecting the credit of the new partnership of White & Pollard, as well as to free White of further worry and annoyance so that he could direct his efforts toward partnership business. While it might be expedient to pay the obligations of a partner incurred in a former business venture, it does not follow that this fact makes the amount paid deductible as an ordinary and necessary expense of the new partnership. The burden of establishing the character of the payments to be ordinary and necessary expenses was upon the petitioners. It certainly cannot be said that the payments involved were ordinary expenses, nor have the petitioners sustained the burden of showing them to be necessary. It is conceded by the parties that White had a valid legal defense to an action instituted against him by the bank and that there was no liability of the new partnership to the bank for this indebtedness.

■ Appellants rely mainly upon Kornhauser v. United States, 276 U. S. 145, 48 S. Ct. 219, 72 L. Ed. 505; A. Harris & Co. v. Lucas (C. C. A.) 48 F.(2d) 187, and Seufert Bros. Co. v. Lucas (C. C. A.) 44 F.(2d) 528, to sustain their position. In each of these cases the payment involved had a much closer relationship to the business carried on by the taxpayer than is present in the case at bar. Appellants claim that, since the partners, and not the partnership, are the taxpayers, the payments were made in connection with the taxpayers' business. However, the deduction was claimed as an ordinary and necessary expense of the business of the partnership and the payments had relation to the previous business of White, but not to the business of White & Pollard as a partnership. We are in accord with the view expressed in A. Harris & Co. v. Lucas, supra, to the effect that statutes permitting deductions from income of ordinary and necessary expenses should be broadly construed to facilitate business generally, but to be deductible as a business expense the expenditure must have some reasonable relationship to that business.

Nor was the amount deductible as a loss sustained by the partnership. Money voluntarily paid in settlement of the individual obligations of one of the partners, incurred prior to the time the partnership was organized, cannot be said to be a loss to the partnership within the meaning of the statute.

■ Petitioners make the alternative contention that, if the deduction is not allowable to both petitioners as business expense or loss incurred in their partnership business, it is allowable to the petitioner Willard W. White as business expense or loss incurred in his business, and the payment to the bank by the partnership constituted a distribution of partnership income to White, thus reducing the distributive share of partnership income taxable to Pollard. This view has been raised for the first time on this appeal and was not presented to or considered by the Board of Tax Appeals. Petitioners, however, argue that the allegations of their petition are sufficient to present the question to this court. Assuming this to be true, we have carefully considered this phase of the case and are of the opinion that, under the law and the facts, this contention is without merit.

Order affirmed.