EUGENE A. and MARY K. HAHN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hahn v. Commissioner
Docket No. 9768-78.
United States Tax Court
T.C. Memo 1979-429; 1979 Tax Ct. Memo LEXIS 99; 39 T.C.M. (CCH) 372; T.C.M. (RIA) 79429; October 15, 1979, Filed Eugene A. Hahn, pro se. William E. Bonano, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1975 in the amount of $501. As set forth below, the statutory notice of deficiency made adjustments to several of the deductions claimed by petitioners on their tax return: Amount on
Amount
Item Adjusted
Return
Allowed
Seminar Expense
$4,300
$2,823
Legal and Professional Expenses
$6,695
$3,811
Posse Expenses
$3,887 $ 732
Alimony
$7,700
$6,578
Insurance
$2,435
$3,456
Medical Expense
$1,898 $ 777
*101 Except for the amount claimed as posse expense, petitioners have made concessions as to all of the adjustments listed above. Respondent has allowed $732 of the posse expense as a charitable contribution, under section 170. The issues remaining for decision are: (1) Whether the amount claimed as posse expense constitutes an ordinary and necessary business expense, under section 162, and, if so, whether deduction is, nevertheless, barred by section 274; and (2) whether the petitioners are entitled, under section 170, to a deduction for the posse expense in any amount exceeding the $732 already allowed by respondent. FINDINGS OF FACT Some of the facts in this case were stipulated. The facts so stipulated, and the exhibits attached thereto, are incorporated herein by this reference, except as otherwise indicated. The petitioners filed a joint Federal income tax return for the year 1975. At the time the petition herein was filed, they resided at 2317 Swathmore Drive, Sacramento, California. Petitioner Eugene A. Hahn (hereinafter referred to as petitioner) is a physician. He has been engaged in the general practice of medicine in the Sacramento area for 20 years, with some *102 specialization in the treatment of allergies. After his graduation from medical school in 1945, petitioner was on active duty in the Navy. While stationed at a hospital in Alaska for a period of three years, he occasionally participated in weekned bear hunts. To participate, it was necessary that one be able to ride a horse. Thus, petitioner was introduced to horseback riding. Petitioner was discharged from the Navy in 1950 and moved to Oregon, where he set up a medical practice and purchased a small beef ranch. While living on the Oregon ranch, petitioner found it necessary to purchase a horse with which to herd cattle. In 1953, he sold the ranch and the horse and moved to Sacramento, California. In making the move to Sacramento, petitioner was faced with the problem of beginning a new medical practice in an area where there were already a number of physicians with established practices. At that time, physicians were not allowed to advertise, and, thus, it was necessary for one starting a new practice to find alternative methods of making himself known in the community. In 1955, petitioner became acquainted with a member of the Sacramento County Sheriff's Mounted Posse *103 (hereinafter sometimes referred to as the posse). Upon the invitation of his new acquaintance, petitioner joined the posse and, for this purpose, bought a horse from him. One of the reasons that petitioner joined the posse was that he thought that it would help to promote his medical practice. He also liked horses and enjoyed riding them. The Sacramento County Sheriff's Mounted Posse was organized in May, 1946. It is a civilian reserve unit of the Sacramento County Sheriff's Office, and members of the posse are deputy sheriffs on an auxiliary basis. They are issued badges and guns, and can be called to active duty in emergencies. The posse has been called out to aid the sheriff in police activities (e.g., searches for missing children) taking place in areas primarily accessible by horseback. [3] In addition, the posse rides as an equestrian drill team and performs at fairs, rodeos, parades, and other exhibitions and competes against other drill teams. Each rider owns and maintains his own hourse and equipment. During the year in question, petitioner owned and maintained *104 two hourses for use in connection with posse activities. For purposes of uniformity, drill team members are required to ride only palomino horses, but they are not required to maintain two of them. Petitioner did so in order to be able to participate in posse events, even though one of his horses was sick or injured. The posse is the champion drill team of the State of California, and has served as honor guard for several governors of the state. Each year the group travels throughout a number of counties within the state and, in addition, makes one or two trips to cities outside the state. In doing so, it contributes to the success of state and county fairs and spreads goodwill in the name of the sheriff's office. Every Wednesday night in 1975, for approximately nine months of the year, petitioner rode in a three-hour drill team practice session. He also exercised his horses once or twice a week on his own, in order to keep them in the proper physical condition for hourses used in a drill team. When petitioner was unable to exercise the horses, his wife did it for him. She, however, had a horse of her own which she used for recreational purposes and, therefore, rode the *105 petitioner's posse horses only to exercise them when he could not. Petitioner rode his horses only during posse events, practice sessions, and weekly exercise sessions, and not for general recreation. The evidence indicates he had very little time for horseback riding and did none other than that connected with his participation in the posse. In addition to serving as a riding member of the posse drill team, petitioner was available to perform medical services in the event that any member of the team was injured. Apparently, petitioner's medical practice has been promoted to some extent by his membership in the posse and his participation in its activities. Over the years, a number of posse members and their families have become his patients. On their 1975 Federal income tax return, petitioners claimed a deduction, in the amount of $3,887, for "Sheriff Posse Exp." This represented costs incurred by petitioner in maintaining his posse horses and equipment and in traveling with the drill team to posse exhibitions. [4] Respondent, in the statutory notice of deficiency, allowed $732 of that expense as a charitable contribution, and disallowed the balance of $3,155. [5] The explanation *106 attached to the statutory notice stated that petitioner was being allowed a deduction for his out-of-pocket expenses for the posse, but gave no indication as to why the amount of the deduction was limited to $732.
OPINION
*107 Petitioner contends primarily that the expenses incurred in connection with his posse activities are deductible, under section 162, as ordinary and necessary business expenses. The basis for this contention is that his association with the posse afforded him an opportunity to meet people and promote his medical practice. Respondent's position is that the amount claimed as posse expense is not deductible because the expenditures were motivated by personal, rather than business, considerations. Furthermore, respondent contends that, even if the expenses at issue are considered to have been motivated by business concerns, they constitute entertainment expenses that are barred from deduction by section 274, because they were not directly related to the active conduct of petitioner's medical practice.
Petitioner has the burden of proving that the expenses at issue were ordinary and necessary within the meaning of section 162. See Rule 142(a), Tax Court Rules of Practice and Procedure. This is essentially a question of fact, and to meet this burden, petitioner must show that the expenditures *108 were made primarily for business purposes. Also, it must be shown that there is a proximate rather than a remote or incidental relationship between the expenditures and the business concerned. Henry v. Commissioner,36 T.C. 879 (1961).
Petitioner argues that, in order to survive, a physician must find some method of promoting his practice other than direct advertising, and, thus, that the expenses of doing so are both ordinary and necessary. He states that the primary reason he joined the posse in 1955 was to promote his medical practice and that the reason he has continued as a posse member, for some 24 years, is that it has been lucrative for him to do so. On brief, he indicates that, at any given time, his medical practice averages approximately 300 active patients and that 189 or more patients have been gained, over the years, as a result of posse membership. He then argues that it would be economically unsound for him to forsake that membership. Accepting all of this as true, we think that the arguments put forth by petitioner were laid to rest in the case of Henry v. Commissioner,supra. In that case, the petitioner was a tax attorney *109 and accountant who sought to deduct, as an ordinary and necessary business expense, the cost of operating and maintaining a yacht. Since the ethics of his profession prohibited advertising, he contended that the operation of his yacht constituted one of the feasible methods of promoting his business. In holding that such expenses were not deductible, this Court stated that: We recognize, as petitioner urges, that the business success of a lawyer or an accountant rests upon the clients who may seek his professional services. We recognize moreover that these clients often come from the contacts -- business, social, personal, or political -- which a professional person, for whatever purpose and by whatever means, may develop or cultivate. Petitioner further requests that we recognize the fact, which we do, that generally a professional person should broaden his contacts in the interests of his practice, although the efforts may be long in producing tangible results. But were we to recognize that expenditures for normally personal pursuits become deductible business expenses simply because they afford contacts with possible future clients without showing a more direct relationship *110 to the production of business income, it is evident that most all club dues and similar expenditures, for example, as well as the expense of appearing at the right place at the right time with the right people, could be claimed as ordinary and necessary business expense. * * * [Henry v. Commissioner,supra at 885-886.] Petitioner, however, asserts that his case is a unique one. He argues that he receives no social or personal benefit from his posse membership. Apparently, petitioner feels that his testimony concerning the number of patients he has gained from posse activities shows such a direct relationship between business and expenditure that this case should be distinguished from previous ones. However, the mere fact that petitioner was successful in gaining patients as the result of posse activities does not, in itself, alter the essential nature of those activities. See Henry v. Commissioner,supra;Larrabee v. Commissioner,33 T.C. 838 (1960). After considering the record in its entirety, we are not convinced that petitioner undertook the expenditures at issue for primarily business reasons, or that there *111 was a proximate, rather than a merely incidental, relationship between the expenditures and petitioner's medical practice. Vis-a-vis his business, petitioner has failed to show how the expenses at issue differ in nature from similar expenditures which might be undertaken by any horse enthusiast. On the basis of this record, we are unable to find that the expense incurred by petitioner in connection with his posse activities is an ordinary and necessary expense of his medical practice. Accordingly, no part of that expense is deductible under section 162. Having reached this conclusion, we need not consider the applicability of section 274 to this case. This leaves only the question of whether any part of the posse expense in excess of the $732 already allowed by the respondent is deductible as a charitable contribution, under section 170. [6]
*112 Petitioner did not expressly raise the charitable contribution issue in either his petition or at trial. He argues the point for the first time on brief. Even so, we hold that the issue is properly before us. [7] Any argument by respondent that he is surprised or put at a disadvantage by petitioner's "raising" this issue would clarly be without merit. The issue, whether respondent erred in limiting to $732 the deduction for petitioner's out-of-pocket expenses for the posse, was framed by respondent's own notice of deficiency. At trial, the evidence indicated that petitioner was entitled to a greater deduction. Respondent, however, was *113 unable to explain why the deduction had been limited to $732.On his own initiative, respondent argued the charitable contribution issue in his brief. Petitioner's arguements on the issue were made in a brief submitted in reply to the arguments made by respondent. On the basis of this record, it is our conclusion that both parties have impliedly consented to a determination of the issue. See Rule 41(b), Tax Court Rules of Practice and Procedure. Compare, Markwardt v. Commissioner,64 T.C. 989 (1975). The respondent's initial determination was that the petitioner incurred out-of-pocket expenses for the posse which are deductible as a charitable contribution. See sec. 1.170A-1(g), Income Tax Regs.That determination is presumptively correct. E.g.,Cohen v. Commissioner,266 F.2d 5 (9th Cir. 1959). Implicit in it is the further determination that the posse is a qualified charitable donee and that the contribution was made for qualified purposes. Given such a determination, and considering the evidence presented at trial, *114 we can see no rational basis for limiting petitioner's deduction to $732. Undoubtedly, respondent recognized this and, in order to justify his position, asserts on brief that the posse is not a qualified charitable donee and that petitioner's contribution was not for qualified purposes. [8] Since this is inconsistent with the initial determination made in respondent's notice of deficiency, he may not so argue without affirmative pleadings on his part, Campbell v. Commissioner,11 T.C. 510 (1948), unless the record indicates that the issues he raises were tried by consent of the parties. See Rule 41(b), Tax Court Rules of Practice and Procedure. We need not make such a determination, however. *115 Even if the issues raised in respondent's brief had been tried by the consent of the parties, it is clear that the burden of proof on those issues would be on respondent and not, as respondent argues, on the petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure; Bank of London & South America, Ltd. v. Commissioner,17 B.T.A. 1263 (1929). Respondent, however, put forth no evidence to support the contentions he makes in his brief. On the other hand, the evidence gives an affirmative indication that petitioner's contribution does qualify under section 170(c)(1). The posse is under the direction of the Sacramento County Sheriff's Office, a political subdivision of the State of California. Furthermore, petitioner's expenditures appear to have been made for exclusively public purposes.At least there was no evidence to the contrary. Absent such evidence, we will not overturn respondent's initial determination that petitioner made a qualified charitable contribution. Bank of London & South America, Ltd. v. Commissioner,supra.See %byrum v. Commissioner,58 T.C. 731, 735 (1972). On the basis of the record herein, *116 we hold that petitioner is entitled to a charitable deduction in an amount greater than $732. However, we do not agree with his assertion that he is entitled to a deduction for the full amount claimed as posse expense. Section 1.170A-1(g), Income Tax Regs., provides that "unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution." For reasons of his own, petitioner maintained two posse horses. However, the evidence indicates that he was required to maintain only one. Indeed, in actually rendering services to the posse, petitioner used only one horse. Therefore, we hold that those expenditures which are attributable to the maintenance of a second horse by him are not deductible, as they were not made directly incident to the rendition of services to the posse. Accordingly, petitioner is entitled to a deduction for only one-half the cost of shoeing and stabling. The other posse expenses, which he apparently would have incurred regardless of the number *117 of horses kept, are deductible in full. * * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioner could not recall whether the posse had been called out for this purpose in 1975.↩
4. Itemized, the expense breaks down as follows: Shoeing $ 200
Stabling
2,520
Cleaning
144
Trailer
275
Tack
448
Meals & Lodging
300
Total
$3,887
The stabling expense includes the cost of hay, grain, and veterinary services. There is no question of substantiation in this case. The respondent concedes that these expenses were incurred and paid for by petitioner. ↩
5. The stipulation of facts stated that the total deduction claimed by petitioners was $3,887, and that $3,155 of this amount was in dispute. It also stated that $702 had been allowed by the respondent as a charitable contribution. However, the $702 is not in mathematical accord with the other figures given in the stipulation, while $732 is. In addition, $732 is the amount which appears in the itemization of adjustments made in the statutory notice. Accordingly, for purposes of this opinion, we find that the respondent allowed $732 as a charitable contribution.↩
6. Section 170 provides in pertinent part as follows: (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- (1) A State, a possession of the United States, or any political subdivision of any of the foregoing * * *, but only if the contribution is made for exclusively public purposes. (2) A corporation * * * organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *↩
7. See Seufert Bros. Co. v. Lucas,44 F.2d 528 (9th Cir. 1930), revg. 14 B.T.A. 1023↩ (1929), holding that where the evidence will support a deduction under one section of the taxing statute, a taxpayer ought not be denied relief simply because he initially relied on a different section. See generally, 9 Mertens, Law of Federal Income Taxation, sec. 50.63, p. 181 (1977 rev.), discussing situations where the Commissioner's determination may be sustained on grounds different from those initially relied on.
8. Respondent purports to limit this new argument to the $3,155 of posse expense which was disallowed. It is his position that none of the posse expense should have been allowed, but he did not wish to "amend the pleadings in this case and assume the burden of proof" with respect to the $732. As noted infra,↩ however, respondent is mistaken in assuming that the burden of proof is on petitioner with respect to the new matter raised by respondent's argument on brief.